74074. LEWIS et al. v. GEORGIA POWER COMPANY.
(355 SE2d 731)

BIRDSONG, Chief Judge.

Wrongful Death — Summary Judgment. The facts of this tragic incident establish that in a field adjacent to a well-traveled public road, Georgia Power had placed a 40-foot power pole. The field apparently was a vacant lot with the power pole at the roadside edge of the field. Neighborhood children frequently played in the field, appar-

ently to the knowledge of Georgia Power. The power pole in question was one in a line and was used to carry very high voltage electrical lines. At the top of the pole were, three power lines carrying 25,000 volts of electricity. The lines were more than 20 feet above ground level and were standard uninsulated power lines commonly used in the transmission of electricity by electric companies. Running up the pole from a long handle switch several feet above the ground a fiberglass rod was attached to the side of the pole. This rod was designed to allow electric company employees to raise the rod and thus to de-energize the power lines apparently to allow localized work on the lines. The fiberglass rod was attached to the 40-foot pole by large bolts. These bolts started ten feet above the ground and were spaced approximately four feet apart.

On the date of the incident involved in this lawsuit, Alan Lewis, a 16-year-old, apparently was firing a rocket-propelled parachute into the air from the field adjacent to the power company's power lines. The evidence indicates that when the parachute descended, it became entangled upon one of the 25,000 volt power lines approximately 20 feet above the ground and 28 feet away from the power pole. It appears also that the youth, Alan, attempted to recover the parachute. A reconstruction of what apparently occurred indicated he was able to use the long-handled switch as a first step or platform to reach the first bolt attaching the fiberglass rod to the power pole. Then using the bolts spaced four feet apart, young Lewis climbed the pole to retrieve his parachute. Upon reaching the area of the pole to which the transmission lines were attached and apparently while attempting to snare the parachute, Lewis came into contact with one of the live power lines. Lewis received a severe electrical shock, causing serious bodily injury which resulted in his death six days later. His parents, as next of kin and administrators of his estate filed a wrongful death action seeking $27,000,000 in damages for wrongful death, pain and suffering, and loss of services. Georgia Power moved for summary judgment contending that young Lewis was a trespasser and had caused his own injuries and death by his negligent acts. The trial court granted summary judgment to Georgia Power from which Mr. and Mrs. Lewis have filed this appeal. *Held*:

Under the law prior to 1982, there could be no question that the trial court quite properly should have granted summary judgment to the power company under this state of facts. The facts of this case establish that young Lewis was a trespasser; permission to *climb* the pole could not be inferred from the fact that the power company was aware that children played near the pole; there was no evidence that Georgia Power lured Lewis into a mantrap nor demonstrated a wilful or wanton intent to harm him; there was no permissible inference arising from the evidence that the wire which was uninsulated but

suspended 20 feet above the ground constituted a mantrap; nor was there any evidence that Georgia Power because it knew children played in the field also was aware that children could or did climb the pole. Under facts very similar to the present case, it was held in *Crosby v. Savannah Elec. &c. Co.*, 114 Ga. App. 193 (150 SE2d 563), that the injured child was not entitled to recover. Two other related cases involved the climbing of wire-carrying towers rather than poles where the child climbed using bolts. In each of these cases, it was held proper to grant summary judgment to the power company. *Georgia Power Co. v. Worthington*, 145 Ga. App. 44 (243 SE2d 297); *Ryckeley v. Ga. Power Co.*, 122 Ga. App. 107 (176 SE2d 493).

From these cases several salient points appear as established. Uninsulated wires suspended high above the ground out of reach of persons on the ground are not "mantraps." Use of uninsulated wires in such a location not only does not amount to wilful or wanton disregard of the safety of others but also constitutes a reasonable use by the power company. Putting a pole to a use for which it is not intended by a trespasser does not subject the owner to liability for such use unless actual knowledge by the owner is shown. Lastly, these cases establish that knowledge that children play in an area near the pole does not constitute knowledge that the children customarily would climb the pole. See *Carden v. Ga. Power Co.*, 231 Ga. 456 (202 SE2d 55); *Georgia Power Co. v. Williams*, 132 Ga. App. 874 (209 SE2d 648).

In March 1982, the Supreme Court considered anew the principles of law applicable to the attractive nuisance doctrine in relation to children. *Gregory v. Johnson*, 249 Ga. 151 (289 SE2d 232). In that case five conditions were recognized which must be met to sustain a cause of action by trespassing children. These are: that the landowner has reason to believe that children are or will be trespassing; that the attracting condition involves an unreasonable risk of death or serious bodily harm to children; that because of their youth the children are not likely to discover the danger or realize the risk involved in intermeddling with the condition; that the utility of maintaining the condition and the burden of correcting is outweighed by the risk to the children involved; and that the landowner fails to exercise reasonable care to eliminate the danger or otherwise protect the children.

We note that these five conditions are conjunctive and not disjunctive, thus all five must be met in order to allow a trespassing infant to recover for injuries incurred on the landowner's property. Moreover, we must consider if the infant lacks sufficient age or experience to appreciate the risk or be aware of the danger, for the rule above-announced finds its genesis in a consideration of the law of negligence and particularly in the area of attractive nuisances, as to whether under the given circumstances the landowner is liable for the

consequences of his negligence when he should in the exercise of ordinary care have foreseen that harm would result to an *infant* trespasser whose presence he should have anticipated. Second Restatement of Torts, § 339, 1965.

Weighed in the light of the *Gregory* case and given the circumstances as shown by this record, we find no error in the grant of summary judgment to Georgia Power Company. At best the Lewises have shown a static condition with uninsulated wires suspended at least 20 feet above the ground, well out of the reach or contact with persons on the ground. It is uncontested that such high voltage wires are common in electrical company usage. It is asserted without contradiction that the bolts on the pole in question were used for the purpose of affixing the fiberglass rod to the pole and not for use as an aid to climbing or as a ladder (as contended by the Lewises). It was not shown that Georgia Power was aware that children were using these bolts as a substitute ladder although there is no dispute that Georgia Power was aware that children played in the adjacent field. Common experience of mankind dictates that a 16-year-old youth of average intelligence is more likely to be aware that electrical wires strung to the top of a power pole may be dangerous than a child of lesser years. Moreover, common experience dictates that the placement of the bolts at four-foot intervals physically would preclude most infants from reaching from one bolt to the next or even from maintaining balance while attempting to make such an unexpected climb. Lastly, the facts show that young Lewis was not climbing the pole as a lark or because of the attractiveness of the challenge to climb but was doing so to recover his rocket-propelled parachute.

As we view these facts, the placement of the activating handle of the switch at a point at least three feet above the ground, with the first attaching bolt at least ten feet above the ground constitutes the same relative degree of care as the placement of a fence around a neighborhood swimming pool. While the placement of the switch handle and bolts obviously did not preclude a determined youth from climbing the pole by using devices not designed to facilitate climbing, neither will a fence preclude a determined youth from climbing a fence. Even in the neighborhood pool situation, it is considered appropriate care to erect a fence and thus preclude a recovery by a trespassing but injured party. Likewise under the facts of this case, we agree with the trial court that Georgia Power had taken all reasonable precautions to prevent children from being exposed to the danger of the high voltage wires. In the absence of actual knowledge that children were capable of climbing the pole and were actually doing so, or that there was a reasonable expectation that children might be exposed to the highly dangerous wires, there was no liability to the decedent in this case who exposed himself to the apparent danger and

assumed the risks of his trespassory act.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED MARCH 13, 1987 —
REHEARING DENIED MARCH 30, 1987 — 

*James W. Lewis*, for appellants.
*Robert L. Pennington*, for appellee.