A93A1425. KNUTZEN et al. v. O'LEARY.
(437 SE2d 347)

ANDREWS, Judge.

The superior court granted partial summary judgment to Kevin O'Leary in Suzanne and Ted Knutzen's lawsuit for the wrongful death of their child and they appeal.

On March 7, 1991, Suzanne and Ted Knutzen, jointly as parents of Steven Knutzen, filed an action against O'Leary and Marshall Hoffman for the wrongful death of their two-year-old son, who drowned on May 6, 1990, in a swimming pool located in the back yard of the neighboring house, owned by O'Leary. In the complaint, the Knutzens claimed that the pool failed to comply with applicable county regulations which required self-closing or self-latching gates and that this non-compliance constituted negligence per se. Secondly,

they claimed that O'Leary knew, or should have known, of young children living and playing near his property and was liable for the maintenance of an attractive nuisance. Finally, they alleged that Hoffman was present on the property on May 6, 1990 and left the gate to the pool area open, which negligence resulted in their son's death.

O'Leary filed a motion for summary judgment arguing that there was no basis for liability since the pool on his property was surrounded by a fence and the yard in which the pool was located was also fenced. The Knutzens then amended their complaint and alleged that O'Leary was vicariously liable for Hoffman's negligence. The court granted O'Leary's motion with respect to the attractive nuisance and negligence per se theories, although the case remains pending against Hoffman and against O'Leary as to the claims of vicarious liability.

The following facts appear undisputed. The pool in which Steven Knutzen drowned was located in the back yard of the O'Leary property, which was next door to the Knutzen's property. O'Leary's property was completely enclosed by a fence, which partially consisted of wire fencing, approximately 50 inches high, and partially of wooden privacy fencing, about 48 inches high. The fence had two gates, both of which were secured by horizontal braces, but which were not self-closing or self-latching. There was evidence that these large gates could not have been opened by a child.

The pool was constructed in July 1984 by the resident who owned the property before O'Leary. When O'Leary moved into the house, there was also an interior fence around the pool. At some point, O'Leary removed a portion of the interior fence, between the pool and his house.

On the day of the accident, defendant Hoffman, O'Leary's wife's stepfather, was tending to the property while the O'Learys were out of town. While Hoffman mowed the lawn, the Knutzens worked in their yard and their two sons played outside. Hoffman opened one of the gates to the O'Leary property while he was mowing the lawn, and the other gate was also opened in order for him to mow the lawn. There is evidence that Hoffman did not put the brace back on either gate.

Prior to the accident, both Mr. and Mrs. Knutzen were aware that O'Leary had a swimming pool and that he had taken a portion of the interior fence down. They were aware that their son Steven had wandered away from their property before, although there is no evidence that he had previously gone to the pool area.

On the date of the tragedy, as Hoffman was leaving the property, Mrs. Knutzen noticed that her son was missing. Eventually, his body was found in the O'Leary pool, under a pool cover. Efforts to resuscitate him were unsuccessful.

1. In their first enumeration of error, the Knutzens claim that the trial court erred in granting summary judgment on their claim. This general assertion is unsupported by specific argument and is deemed abandoned. Court of Appeals Rule 15 (c) (2).

2. In their second and third enumerations, the Knutzens claim that the court erred in ruling that summary judgment was proper under *Gregory v. Johnson*, 249 Ga. 151 (289 SE2d 232) (1982). The Knutzens argue that the trial court erroneously concluded that the first prong of the five-part test adopted in *Gregory* was not met.

In *Gregory*, supra, our Supreme Court adopted the approach of the Second Restatement of Torts regarding artificial conditions which are highly dangerous to trespassing children. " 'A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

"(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to the children involved, and

"(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise protect the children.' " Id. at 154. The court stated that, unlike other risks, "[a] swimming pool in a residential setting is often found to be a condition which could present issues of negligence and foreseeable risk of injury." Id.

Further, " '[w]hile it is actionable negligence for one to leave unguarded on a part of his own premises, which he knows is frequented by children of tender years for the purpose of play, a dangerous thing or condition which may injure such children, he is not required to provide against remote or improbable injuries to children playing upon his land.' [Cit.] The duty imposed is to exercise reasonable care to prevent foreseeable injury, not to protect against any injury. If all of the first four conditions of the Restatement are found to exist, it must also be proved that 'the possessor fails to exercise reasonable care to eliminate the danger or otherwise protect the children.' [Cit.] The results reached in the opinions in *Odom* [infra] and *Oliver* [infra] would not be inconsistent with the Restatement because the erection of a fence or other enclosure around a pool is generally held to be all

that is required of a landowner in the exercise of reasonable care." (Emphasis omitted.)

In this case, the facts established that the trial court properly concluded that the first prong of the test was not met. Steven Knutzen had not been invited to the pool area and there was no evidence that he had ever played at the pool before. The fact that he had previously been on other parts of O'Leary's property is not relevant, since there was no evidence that he had come to the area in which the accident occurred. Furthermore, there was no evidence to show that O'Leary should have been aware that the gates would be left open so that it would be possible for children to trespass. Accordingly, the court did not err in concluding that the first prong of the test was not met.

3. Next, the Knutzens claim that the court erred in ruling that O'Leary's violation of an ordinance regarding swimming pools did not constitute negligence per se. The Knutzens claim that the Cobb County Commission adopted the Standard Swimming Pool Code as promulgated by the Southern Building Code Congress International and that O'Leary violated those provisions.

Pretermitting the issue of whether a violation of that section would constitute a violation of the duty owed under *Gregory*, we find this enumeration without merit. First, the regulations referred to are not properly included in the record before us. This court cannot take judicial notice of these ordinances, see generally *Oliver v. City of Macon*, 241 Ga. 306 (245 SE2d 280) (1978); *Dix v. State*, 156 Ga. App. 868 (275 SE2d 807) (1981), and the arguments of the attorneys in this regard are not evidence.

Further, even assuming the regulations cited by the Knutzens were properly before us, we do not find that O'Leary violated these provisions. According to the provisions cited, self-latching or self-closing gates are required "for the design, construction or installation, repair or alterations of swimming pools, public or private, and equipment related thereto; *requiring a permit and inspection.*" (Emphasis supplied.) There is no clear evidence here that O'Leary was required to have a permit to alter the fence in the fashion he did. For this and other reasons, the standards cited do not appear applicable and we reject the Knutzens' argument that O'Leary's failure to equip his gates with self-closing, self-latching gates was negligence per se.

4. Finally, the Knutzens argue that the trial court erred in failing to find that O'Leary had met the fifth prong of the *Gregory* test above. The Knutzens argue that O'Leary failed to exercise reasonable care to protect children from the dangerous condition on his property in that he removed the only pool fence which provided adequate protection for the pool area; failed to maintain self-closing and latching gates and left a floating cover on the pool which would not support a

child's weight. The Knutzens argue that the court applied a "willful and wanton" standard of negligence and that this standard was inappropriate.

Although it is true that *Gregory* held that in certain circumstances a question of fact may exist as to whether a landowner has a duty to erect a fence around a residential swimming pool, here the evidence was that, as a matter of law, O'Leary exercised such reasonable care.

In *Odom v. Lee*, 145 Ga. App. 304 (243 SE2d 699) (1978), cited with approval by the *Gregory* court, this court reversed the denial of a motion for summary judgment in plaintiff's wrongful death action against her landowner after an accident in his swimming pool. In that case, the pool was surrounded by a padlocked chain link fence, which was padlocked at the time the child was found. Similarly, in *Oliver v. City of Atlanta*, 147 Ga. App. 790 (2) (250 SE2d 519) (1978), the swimming pool had a fence with a gate around it, although a question existed as to whether the gate to the area was chained and locked. There, the court affirmed the grant of summary judgment, concluding that because the child was a trespasser, liability would attach only for wilful or wanton acts.

Here, O'Leary exercised reasonable care under the *Gregory* standards. See *Adams v. Atlanta Faith Mem. Church*, 191 Ga. App. 215 (381 SE2d 397) (1989). The trial court's grant of summary judgment on the issues presented was proper.

*Judgment affirmed. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED OCTOBER 20, 1993.

*Blackwood & Matthews, John D. Steel*, for appellants.
*Van Gerpen, Hoffman & Harris, Frank P. Harris, Fortson & White, Frederick W. Ajax, Jr., Harvey S. Gray, Michael D. St. Amand*, for appellee.

